IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MEHDI SAHARKHIZ<br>110 Spruce Lane North<br>Haledon, NJ 07508<br><br>        Plaintiff,<br><br>        v.<br><br><br>THE ISLAMIC REPUBLIC OF IRAN;<br><br>SEYED ALI HOSSEINI KHAMENEI, The Supreme Leader of Iran; and<br><br>THE ISLAMIC REVOLUTIONARY GUARD CORPS,<br><br>c/o Ministry of Foreign Affairs<br>Khomeni Avenue,<br>United Nations Street<br>Tehran, Iran<br><br>        Defendants. | Case #: 1:19-cv-2938 |

## **COMPLAINT**

1. Plaintiff, Mr. Mehdi Saharkhiz, the son of prominent Iranian journalist Isa Saharkhiz, by and through undersigned counsel, bring suit against Defendants the Islamic Republic of Iran and the Islamic Revolutionary Guard Corps. ("IRGC") (collectively, "Iran" or "Iranian Government" or "Defendants") under the Foreign Sovereign Immunities Act, 28 U.S.C. §§ 1602 *et seq.* ("FSIA"), for severe personal injuries and other irreparable harm suffered as a result of Defendants' unlawful acts of torture, hostage taking, and other torts against Plaintiff and against Mr. Isa Saharkhiz, the father of the Plaintiff.

2. Plaintiff, Mr. Mehdi Saharkhiz, brings this complaint in order to recover for the actions of the Iranian government in torturing and wrongfully imprisoning Mr. Isa Saharkhiz. Mr. Isa Saharkhiz was taken as a political hostage in order to discredit him, prevent him from speaking out against the Iranian regime, and preclude him from continuing his career as a reformist journalist writing pieces that criticize the Iranian government. Mr. Isa Saharkhiz has been arrested numerous times by Iranian authorities in their attempt to restrict the freedom of the press in Iran. His imprisonment is an attempt by the regime to deter other like-minded journalists from publishing articles and information which

discredit the Iranian government and expose the administration's crimes against humanity. Plaintiff brings this action under section 1605A of the Foreign Sovereign Immunities Act, which provides for private causes of action against a state sponsor of terrorism, in this case the Islamic Republic of Iran, for personal injury caused by acts of torture.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over this matter and over Defendants pursuant to 28 U.S.C. §§ 1330(a), 1330(b), 1331, 1332(a)(2) and 1605A(a)(1), which create subject matter jurisdiction and personal jurisdiction for civil actions for personal injuries against State Sponsors of Terrorism and their officials, employees, and agents.

4. 28 U.S.C. § 1605A(c) provides a federal private right of action against a foreign state that is or was a State Sponsor of Terrorism, and also against any official, employee or agent of that foreign state while acting within the scope of his or her office, employment or agency, for personal injury and related torts.

5. Venue is proper in this district pursuant to 28 U.S.C. § 1391(f).

## PARTIES

6. Plaintiff Mr. Mehdi Saharkhiz ("Mehdi") is the son of Iranian journalist Mr. Isa Saharkhiz. Mehdi was born on September 21, 1981 in Iran and moved to the United States on August 14, 2004. He is a United States citizen and is a domiciliary and resident of New Jersey.

7. Defendant the Islamic Republic of Iran is a foreign state. Iran is a theocratic republic with an elected head of government and a head of state—the Ayatollah or Supreme Leader—appointed for life by a council of theologians. The Supreme Leader controls the Guardian Council of the Constitution, which interprets the Iranian Constitution, supervises elections (including by determining which candidates may run), and exercises significant influence over the legislative, executive, and judicial branches of government, as well as the military and IRGC.

8. Defendant Seyed Ali Hosseini Khamenei has been Iran's Supreme Leader since 1989. He was previously the President of Iran from 1981 to 1989. As Supreme Leader, Khamenei is the head of state of Iran and the commander-in-chief of its armed forces. For this reason, he is considered the most powerful political authority in the country. As Supreme

Leader, Khamenei can issue decrees and make the final decisions on the main policies of the government in fields such as economy, the environment, foreign policy, and national planning within Iran. Khamenei has direct control over the executive, legislative and judicial branches of government, as well as the military and media. President Donald J. Trump imposed secondary sanctions on Ali Khamenei stating that: "in light of the actions of the Government of Iran…to promote international terrorism…hereby order: Section 1. (a) All property and interests in property that are in the United States, that hereafter come within the United States, or that are or hereafter come within the possession or control of any United States person of the following persons are blocked and may not be transferred, paid, exported, withdrawn, or otherwise dealt in: (i) the Supreme Leader of the Islamic Republic of Iran and the Iranian Supreme Leader's Office (SLO)". Exec. Order No. 13876, 84 Fed. Reg. 30574 (June. 26, 2019).

9. Defendant the Iranian Revolutionary Guard Corps or IRGC is a military organization under the control of the Guardian Council. The IRGC was established in the wake of the Islamic Revolution to act as the country's "ideological custodian"[1] and is generally understood to be one of the most reactionary, powerful, and oppressive factions of the Iranian Government. The IRGC fields an army, navy, air force, and intelligence service, and it conducts foreign operations through its paramilitary arm, the Quds Force. The Quds Force has primary responsibility for arming pro-Iranian military groups across the Middle East and beyond and has been designated by the U.S. Department of Treasury as a sponsor and supporter of terrorism.[2]

## STATEMENT OF FACTS

10. Mr. Isa Saharkhiz ("Saharkhiz") is an Iranian journalist, political figure in Iran.

11. Saharkhiz is a founding member of the central council of the Association for the Defense of Press Freedom in Iran.

12. Saharkhiz played a critical role in helping to establish professional societies for Iranian journalists including: the Society of Iranian Journalists, the Society of Young Journalists, the Society of Women Journalists, and the Society of Freelance Journalists. These

---

1. Greg Bruno et al., *Iran's Revolutionary Guard*, COUNCIL ON FOREIGN RELATIONS (Jun. 14, 2013),

2. U.S. DEP'T OF TREASURY, *Blocking Property and Prohibiting Transactions with Persons who Commit, Threaten to Commit, or Support Terrorism*, www.treasury.gov/resource-center/sanctions/Programs/Documents/terror.pdf.

13. societies helped journalists fight for their rights, specifically economic rights, and helped them with issues related to job security and unemployment.[3]

13. Indeed, one of the publications that Saharkhiz helped publish, *Zan (Woman)*, was the first newspaper in Iran dedicated to women and women's issues that are considered taboo by certain conservative groups within Iran. *Zan* came under scrutiny almost immediately within the Iranian judiciary, which is controlled by radical revolutionary conservatives, and was eventually banned. The judiciary used the ban on *Zan* as an excuse to go after Saharkhiz.[4]

14. The judiciary forced Saharkhiz to resign from his position at the IRNA, which began a feud between Saharkhiz and Ayatollah (Supreme Leader) Khamenei that is ongoing to this day.[5]

15. In April 2000, Ayatollah Khamenei gave several speeches in which he praised "lawful violence" against those considered agents against the Iranian state. The Ayatollah also spoke out against reformist publications, referring to their reporting as "charlatanism." Shortly thereafter, fourteen reformist publications were closed by the judiciary, several of which were overseen by Saharkhiz.[6]

16. Despite the ban on reformist publications, Saharkhiz did not give up journalism and continued to fight against the Iranian establishment and repression. In 2003, Saharkhiz was arrested for the first time by IRGC agents and was put on trial by the judiciary. Saharkhiz was convicted at this time and banned from working for the Iranian government for one year.[7]

17. Saharkhiz continued to write for reformist publications even after his first arrest. He helped found the Society for the Defense of Freedom of the Press ("SDFP") in Iran. The SDFP has been outspoken in its opposition to censorship and press suppression, and the constant harassment and imprisonment of journalists.[8]

---

3. *Id.*

4. *Id.*

5. *Id.*

6. *Id.*

7. *Id.*

8. *Id.*

18. Furthermore, Saharkhiz is one of the first journalists to directly target Ayatollah Khamenei in his writings. He wrote frequently about the direct role the Ayatollah plays in all the important decisions conservative hardliners make to confront reformists and engage in the oppression of the Iranian people. Saharkhiz often advocated for a confrontation of the Ayatollah by reformists directly, a sentiment which deeply angered hardliners.[9]

19. Saharkhiz was arrested for a second time by agents of the IRGC in June of 2009 during the post-presidential-election crackdown. On June 13, 2009, the day after the rigged presidential election, IRGC agents raided Saharkhiz's home where they threatened his nineteen-year-old daughter, and seized computers, CDs, and Saharkhiz's personal notes. On June 20th, Saharkhiz was summoned to the Iranian courts by a prosecutor in Tehran, but he refused by informing the judiciary that he was traveling.[10] On July 4th, Saharkhiz was arrested in northern Iran.[11] During the arrest, Saharkhiz ribs were broken due to assault and battery done by IRGC's agents. Saharkhiz was severely injured at time of the arrest and during the interrogations by IRGC's agents.

20. Three days before his arrest, Saharkhiz told a German newspaper that he was on the run from Iranian officials and that he had to change homes frequently. Saharkhiz also stated that he only turned his mobile phone on for an hour each day so as not to be tracked by authorities. Indeed, a phone trace is how IRGC agents found Saharkhiz in northern Iran and arrested him.

21. Although in May 2010 the UN Working Group on Arbitrary Detention found Saharkhiz's detention to be arbitrary and requested that the Iranian government release him immediately and unconditionally,[12] Saharkhiz was sentenced to three-years imprisonment on charges of "insulting Iran's supreme leader" and "spreading propaganda against the regime."[13] On August 5, 2011, Saharkhiz was sentenced to an additional two years in prison for his former journalistic activities.[14]

---

9. *Id.*

10. *Id.*

11. *Iran: Isa Saharkhiz—Imprisoned Journalist*, AMNESTY INTERNATIONAL (2011), https://www.amnestyusa.org/pdfs/Iran11.pdf.

12. *Id.*

13. *Jailed Iranian Journalist Subject To 'Inhumane Treatment,'* RADIOFREEEUROPE RADIOLIBERTY (Sept. 12, 2011), https://www.rferl.org/a/jailed_iranian_journalist_inhumane_treatment/24326979.html.

22. While in prison for these "offenses," Saharkhiz's health deteriorated. He is allergic to certain foods and takes medications for these allergies, as well as blood pressure and kidney medication,[15] which were not administered appropriately while he was in jail. Also, according to his son, named Plaintiff herein, Saharkhiz's ribs were broken in the struggle that took place with IRGC agents during Saharkhiz's arrest.[16] Saharkhiz also suffered from a ruptured eardrum and lost mobility in his right leg, but was denied medical leave from prison in order to seek treatment. In late November 2010, Saharkhiz was reported to have been suffering from severe pain; it was discovered that he was bleeding internally, and a medical team was brought to perform surgery on him in the prison clinic.[17]

23. In addition to medical difficulties, Saharkhiz's imprisonment has separated him from his family for years at a time. This separation and the knowledge that Saharkhiz is suffering in prison at the hands of IRGC agents has seriously impacted Saharkhiz's family, specifically his son, Mehdi Saharkhiz, named Plaintiff herein. Since Saharkhiz was first arrested in 2009, Mehdi has led a one-man digital campaign from his home in New Jersey aimed at liberating his father.[18]

24. After spending over four years in prison, including several months in solitary confinement, Saharkhiz was released from prison in October 2013. However, upon his release, Saharkhiz remained outspoken against the Iranian regime and authorities and was consequently rearrested in November 2015 again for "insulting the Supreme Leader" and "propaganda against the regime."[19]

25. Following his release from prison in 2013, Saharkhiz spoke to IranWire about his detention and the conditions of Evin Prison where he was held:

---

14. *Iran: Isa Saharkhiz—Imprisoned Journalist*, AMNESTY INTERNATIONAL (2011), https://www.amnestyusa.org/pdfs/Iran11.pdf.

15. *Iranian journalist Issa Saharkhiz sentenced to three years in jail*, COMMITTEE TO PROTECT JOURNALISTS (Aug. 10, 2016), https://cpj.org/2016/08/iranian-journalist-issa-saharkhiz-sentenced-to-thr.php.

16. Muhammad Sahimi, *Courageous & Principled: Journalists Isa Saharkhiz and Ahmad Zeidabadi*, PBS (Nov. 21, 2009), https://www.pbs.org/wgbh/pages/frontline/tehranbureau/2009/11/courageous-principled-journalists-eisa-saharkhiz-and-ahmad-zeidabadi.html#ixzz1Xwvo64FT.

17. *Iran: Isa Saharkhiz—Imprisoned Journalist*, AMNESTY INTERNATIONAL (2011), https://www.amnestyusa.org/pdfs/Iran11.pdf.

18. Ivan Watson, *Freed Iranian journalist, 'proud' son dream of a reunion*, CNN (October 13, 2013), https://www.cnn.com/2013/10/10/world/meast/iranian-father-son-separated/index.html.

19. *Isa Saharkhiz*, JOURNALISM IS NOT A CRIME (2017), https://journalismisnotacrime.com/en/wall/isasaharkhiz/.

There is evidence that my name was on a list of people whose arrests were planned before the fraudulent election in 2009 got underway. There was a vast operation to arrest us, which started shortly after the polls closed at 11pm on Monday June 12th. My own arrest was delayed due to my many trips and my frequent absences from my home and office. I was summoned to the Intelligence Ministry by phone, but I was absent at the time and could not report to them as requested. A few hours after Ayatollah Khamenei's speech at Friday Prayers on June 19th, there was a lot of focus on the interviews I'd done with foreign Persian-language TV and radio networks and their correspondents in Iran. My arrest was a priority, so much so that Saeed Mortazavi, Prosecutor General of Tehran at the time, came to arrest me personally. The police tried to lure me to the prosecutor's office so they could arrest me there, but it didn't work. Next, they raided my home and my office close to Vanak Square on Sunday, June 21st and Monday, June 22nd. They confiscated some of my personal items and papers. It took them three weeks.

I was arrested on the morning of Friday, July 3rd in a village near the town of Royan. Intelligence Ministry agents had a warrant issued by the Mazandaran province attorney general. During the arrest, the eight officers beat me repeatedly. My ribs were broken, my left shoulder tendon was damaged and my body, especially my sides and my wrists, were covered with red, purple and black spots. I was kept in Cell Block 209 at Evin Prison until a few days before the Iranian new year on March 21, 2010. I was not tortured but was kept in solitary confinement, from three to four months in cells 31, 51, 42, and so on, to two weeks in cell 75, and eventually a month and a half in cell 127.

I was seriously sick and was prone to fainting so often they assigned a cellmate to me so he would report to them if I fainted and they could take me to the prison's clinic. Of course, most of the time my cellmates were not political prisoners. They were in for drug smuggling or were accused of being part of a pyramid scheme called Gold Quest. After five months in solitary confinement, I was moved to a four-prisoner cell. One of my cellmates was a Kuwaiti man affiliated with al-Qaeda. Only when the prison was overcrowded would they put me next to ordinary prisoners. After the incident on February 6, 2010, I was given additional harsh punishment. On a cold night—it was 6 degrees Celsius—I was taken to the rooftop of Cell Block 209 without any warm clothes, shoes or socks. This punishment led to serious medical problems for me, including liver and lung trouble, which I still suffer from. As I was injured during my arrest, from the moment I arrived at Evin Prison, I requested to be sent to forensics so that I could provide evidence of torture as part of my complaints against the Supreme Leader, the president and the intelligence minister. I told interrogators that this request was a condition for answering interrogators' questions. As a result, my interrogations consisted of a few short sessions.

They kept me in solitary confinement, and I was not sent to court for about two years. Because I was arrested in northern Iran, they sent me to the Noor county court in Mazandaran. The judge did not know anything about my case, so he set a bail of 20 million tomans (about $7,600). During my detention I had not been given any furloughs so there was no reason to increase the bail until I was released. After serving my three-year sentence—two years for insulting the Supreme Leader and one year for propaganda against the regime—I remained in jail. Instead of releasing me, prosecutors reopened a 10-year-old case against the newspaper Akhbar-e Eghtesad and the magazine Aftab, for which I worked. The case was supposed to have expired by then, but a new two-year sentence was issued. The defense attorney objected that the two similar charges—I was charged with propaganda against the regime again—did not merit two sentences. The sentence was reduced to a year and a half, but the implementation of the sentence was delayed for two months until October 6, 2013. In effect, I was released from the prison's infirmary after a delay of three and a half months, taking into account the furloughs to which I was entitled.[20]

---

20. *Id.*

26. Plaintiff Mehdi Saharkhiz, Saharkhiz's son, was unable to see his father while he was imprisoned and could not return to Iran to visit his father even when he was released from prison due to safety issues. As of Saharkhiz's release in 2013, Mehdi and Saharkhiz had not been reunited in over ten years. Mehdi has yet to fulfill his mandatory Iranian military service and fears he could be detained if he returned to Iran due to his own outspoken criticism of the Iranian regime.[21]

27. Saharkhiz was again arrested in November 2015 with at least three other journalists who were accused of being members of an "infiltration network" and colluding with "hostile" Western governments.[22]

28. While Saharkhiz's trial was initially scheduled for March 8, 2016 it was postponed by the court due to Saharkhiz's medical issues. The same day the Human Rights Activist News Agency reported that Saharkhiz had been transferred within the notorious Evin Prison outside of Tehran and was being held in a ward reserved for financial offenders rather than the ward used for those political prisoners in pretrial detention. It was later discovered that prior to this transfer, Saharkhiz had been held in solitary confinement for nearly a month and that he was physically assaulted by IRGC agents during the move.[23]

29. On August 9, 2016, Saharkhiz was sentenced to another three years in prison. On September 17th, Branch 28 of the Islamic Revolution Court notified Saharkhiz's lawyer that his sentence had been reduced to 21 months' imprisonment.[24]

30. Despite multiple attempts to acquire Saharkhiz's leave from prison in order to receive medical treatment for his ailing health, prison officials refused to release Saharkhiz even though he was suffering from several severe conditions at the time.[25] On March 12, 2017, Saharkhiz was beaten while in prison by IRGC agents and was then taken to a hospital

---

21. Watson, *supra* note 21.

22. *Isa Saharkhiz*, JOURNALISM IS NOT A CRIME (2017), https://journalismisnotacrime.com/en/wall/isasaharkhiz/. In an interview with Journalism Is Not A Crime, Isa Saharkhiz's son, Mehdi (named Plaintiff herein), stated, "My father wasn't doing anything, he was posting on Facebook, maybe talking to different groups, and writing articles for different websites. He was just putting his opinion out there, which according to the Iranian constitution he has a right to do. This arrest is completely illegal; it doesn't have any basis. There is absolutely no evidence presented as to what these charges are based on."

23. *Id.*

24. *Id.*

25. *Despite Ailing Health, Imprisoned Journalist Isa Saharkhiz Continues to Criticize Iranian Regime*, FANACK (June 29, 2017), https://fanack.com/iran/faces/isa-saharkhiz/.

where it was discovered he also was having heart problems due to a hunger strike he had been involved in at the prison.[26]

31. On April 25, 2017, Saharkhiz was released from Evin Prison with authorities stating that he had completed his term of incarceration for the crime of insulting the Ayatollah.[27] However, in June of 2017, Saharkhiz was once again sentenced to six months in prison for the crime of "spreading lies in favor of enemies" because of his many articles which have criticized the Iranian regime.[28]

32. Indeed, since the revolution of the late 1970s, the Iranian government has continuously worked to suppress journalists and news sources which speak out against the regime. This control over the press is central to the Iranian government's hold over its citizens and ability to remain in power.[29]

33. As a party to the International Covenant on Civil and Political Rights, Iran has legal obligations to protect the rights of its citizens to free expression and access to information. The rights to freedom of expression provided under international human rights law may be limited only within narrowly defined boundaries. The penalization of a media outlet, publishers, or journalists solely for being critical of the government or the existing political system can never be considered a necessary justification to restricting the freedom of expression. However, the overly broad exceptions to free expression contained in the Iranian constitution, security laws, and the Iranian penal code more generally, allow the authorities to suppress these rights beyond the limits set by international law. International human rights law prohibits laws, such as Iran's, that criminalize criticizing or "insulting" state institutions, including the supreme leader. Furthermore, domestic Iranian laws define crimes in broad and vague terms, and therefore do not permit a person to know what acts constitute a criminal violation, which also violates international human rights law. Since the disputed 2009 presidential

---

[26]. Saleh Hamid, *Iran imprisons journalist for reporting on judiciary corruption allegations*, AL ARABIYA (June 28, 2017), http://english.alarabiya.net/en/media/print/2017/06/28/Iran-imprisons-journalist-for-reporting-on-judiciary-corruption-allegations-.html.

[27]. *Former media official released from jail*, THE IRAN PROJECT (April 26, 2017), https://theiranproject.com/blog/2017/04/26/former-media-official-released-jail/.

[28]. Hamid, *supra* note 29.

[29]. *See* Jason Rezaian, *Journalism in Iran nears extinction*, THE WASHINGTON POST (August 7, 2019), https://www.washingtonpost.com/opinions/2019/08/07/journalism-iran-nears-extinction/; *see also* Robert Booth, *BBC urges UN to act over harassment of journalists in Iran* (March 11, 2018), https://www.theguardian.com/media/2018/mar/12/bbc-urges-un-to-act-over-harassment-of-journalists-in-iran.

election, revolutionary court judges have increasingly interpreted vaguely drafted provisions of national security charges inconsistently with international law by citing legitimate peaceful dissent as evidence of acting against national security.[30]

34. Mr. Saharkhiz is a victim of the Iranian authoritarian regime and their war against journalism and the freedom of the press. Saharkhiz's imprisonment in Iran has created great distress for his family, specifically his son Mehdi, named Plaintiff herein as he is constantly worried about his father's health and safety and is unable to return to Iran himself.

## COUNT I
## 28 U.S.C. 1605A(c), PRIVATE RIGHT OF ACTION

35. Plaintiff incorporates by reference the allegations of the preceding paragraphs.

36. Iran is a state sponsor of terrorism as described in 28 U.S.C. §1605A(a)(2)(A)(i).

37. Defendants and their agents were acting within the scope of their office, employment, or agency in committing the acts alleged herein, including, but not limited to, the hostage taking and torture of Mr. Isa Saharkhiz.

38. As a direct and proximate result of the willful, wrongful, intentional, and reckless acts of IRGC and its agents, whose acts were funded and directed by the Islamic Republic of Iran, Plaintiff suffered, *inter alia*, physical pain and suffering, mental anguish, emotional pain and suffering, and/or economic losses resulting from Defendants' acts.

39. Pursuant to 28 U.S.C. §1605A(c), Plaintiff, who is a national of the United States, may assert a cause of action against Defendants for personal injury that was caused by acts of terror or the provision of material support or resources for such an act, if performed or provided by an official, employee, or agent of Defendants while acting within the scope of his or her office, employment, or agency.

40. Accordingly, as a result of Defendants' actions, Plaintiff seeks compensatory and punitive damages. Plaintiff is asking for Fifty Million USD $50,000,000 compensatory damages and Five Hundred Million USD ($500,000,000) punitive damges.

## COUNT II
## ASSAULT AND BATTERY

41. Plaintiff incorporates by reference the allegations of the preceding paragraphs.

---

30. *Flawed Convictions for Journalists*, HUMAN RIGHTS WATCH (May 3, 2016), https://www.hrw.orgnews/2016/05/03/iran-flawed-convictions-journalists.

42. "An actor is subject to liability to another for assault if (a) he acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such contact, and (b) the other is thereby put in such imminent apprehension."[31]

43. Hostage taking and torture, under the FSIA, constitute assault because "acts of terrorism are, by their very nature, intended to harm and to terrify by instilling fear of further harm."[32]

44. Saharkhiz was held hostage and tortured by Defendants, resulting in harmful contact and fear of such harmful contact.

45. While in Defendants' custody, Saharkhiz was routinely subjected to harmful and offensive contact, including being forcibly moved at gunpoint, beatings, and other forms of torture.

46. While in Defendants' custody, Saharkhiz was frequently threatened with harmful and offensive physical contact, including death and dismemberment. These threats placed Saharkhiz in imminent apprehension of death, torture, abuse, and other physical and emotional injuries. He constantly fears for his health and safety.

47. Plaintiff seeks damages for this count.

## COUNT III
## FALSE IMPRISONMENT

48. Plaintiff incorporates by reference the allegations of the preceding paragraphs.

49. "(1) An actor is subject to liability to another for false imprisonment if (a) he acts intending to confine the other or a third person within boundaries fixed by the actor, and (b) his act directly or indirectly results in such a confinement of the other, and (c) the other is conscious of the confinement or is harmed by it."[33]

50. The unlawful arrest and imprisonment of Isa Saharkhiz by Defendants constitutes false imprisonment.[34]

51. Defendants unlawfully detained Isa Saharkhiz in Evin Prison multiple times, an institution that is known both within Iran and globally for its brutal mistreatment of

---

31. Restatement (Second) of Torts § 21 (Am. Law Inst. 1965).

32. *Valore v. Islamic Republic of Iran*, 700 F. Supp. 2d 52, 76 (D.D.C. 2010).

33. Restatement (Second) of Torts §35 (Am. Law Inst. 1965).

34. *See, e.g., Jenco v. Islamic Republic of Iran*, 154 F. Supp. 2d 27, 34 (D.D.C. 2001); *Sutherland v. Islamic Republic of Iran*, 151 F. Supp. 2d 27, 49 (D.D.C. 2001).

hostages, political prisoners, and human rights defenders. Saharkhiz was fully aware of this illegal detention. Saharkhiz has suffered physical, economic, emotional, and psychological harm as a result of this illegal detention.

52. Plaintiff seeks damages for this count.

## COUNT IV
## HOSTAGE TAKING

53. Plaintiff incorporates by reference the allegations of the preceding paragraphs.

54. The FSIA confers jurisdiction on the courts and creates an independent federal cause of action to recover for injuries sustained as a result of terrorist acts, such as hostage taking or torture. Under the statute, Plaintiff must prove that (1) there was an act of "hostage taking" or "torture"; (2) the act was committed by the foreign state or "an official, employee, or agent of such foreign state"; (3) the act "caused (4) "personal injury or death" (5) "for which the courts of the United States may maintain jurisdiction under this section for money damages."[35]

55. Seizing an individual in an effort to extract information from him to be used against him and others is hostage taking within the definition provided by the FSIA.

56. Isa Saharkhiz has been seized by Defendants' agents' multiple times. Saharkhiz was detained in Evin Prison, a facility notorious for its brutal mistreatment of political prisoners and other individuals detained without due process. Isa Saharkhiz was not allowed access to counsel during this time, much of which he spent in solitary confinement.

57. There is significant and compelling evidence that Isa Saharkhiz was tortured to be compelled to present forced and falsified testimony against the United States, himself and other Iranian journalists and political activists.

58. Isa Saharkhiz's prolonged detention resulted in physical injuries, including respiratory, cardiac, and severe depression. He was denied necessary medical care and medication. During his imprisonment, he may have been exposed to asbestos, mold, and other environmental toxins, with unknown health effects.

59. Isa Saharkhiz suffered from acute psychological and emotional injury and other pain and suffering as a direct result of his detention and abuse—including solitary confinement, lack of medical care, inadequate nutrition, interrogations, physical distress, intimidation

---

35. 28 U.S.C. §1605A(a)(1) & (c); *Valencia v. Islamic Republic of Iran*, 774 F. Supp. 2d 1, 10-11 (D.D.C. 2010).

and disorientation, and denial of due process. While in prison, Isa Saharkhiz experienced depression and suicidal ideations. He has trouble sleeping and has experienced issues with concentration as well as other symptoms of post-traumatic stress disorder. His relationships with his family, including Plaintiff, have been permanently compromised by his experiences during his unjust and illegal imprisonment.

60. Plaintiff seeks damages for this count.

## COUNT V
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS/SOLATIUM

61. Plaintiff incorporates by reference the allegations of the preceding paragraphs.

62. "An actor who by extreme and outrageous conduct intentionally or recklessly causes severe emotional harm to another is subject to liability for that emotional harm and, if the emotional harm causes bodily harm, also for the bodily harm."[36]

63. When a defendant's conduct is directed at a third person, the Restatement generally requires that a plaintiff be a "close family member" and have "contemporaneously perceive[d] the event."[37]

64. "All acts of terrorism are by their very definition extreme and outrageous and intended to cause the highest degree of emotional distress, literally, terror, in their targeted audience."[38]

65. Because Isa Saharkhiz was taken hostage and tortured, Plaintiff need only demonstrate that he is a close family member, and that emotional distress did result, in order to state a valid theory of recovery for intentional infliction of emotional distress.[39]

66. Defendants' extreme and outrageous conduct in holding Saharkhiz hostage and inflicting torture upon him caused Mehdi Saharkhiz to suffer from severe emotional harm, including depression, persistent feelings of guilt, loss of sleep, paranoia, loss of focus, and other symptoms of post-traumatic stress disorder.

67. Plaintiff seeks damages for this count.

---

36. Restatement (Third) of Torts: Liability for Physical & Emotional Harm §46. *See also Valencia*, *supra* note 38, at 14; *Acosta v. Islamic Republic of Iran*, 574 F. Supp. 2d 15, 28 (D.D.C. 2008).

37. Restatement (Third) of Torts: Liability for Physical & Emotional Harm § 46 cmt. m. *See also Valencia*, *supra* note 38, at 14.

38. *Estate of Heiser v. Islamic Republic of Iran*, 659 F. Supp. 2d 20, 27 (D.D.C. 2009) (quoting *Stethem v. Islamic Republic of Iran*, 201 F. Supp. 2d 78, 89 (D.D.C. 2002)).

39. *See Roth v. Islamic Republic of Iran*, 78 F. Supp. 3d 379, 401 (D.D.C. 2015).

## COUNT VI
## LOSS OF PROPERTY

68. Plaintiff incorporates by reference the allegations of the preceding paragraphs.

69. The FSIA allows for recovery for "reasonably foreseeable property loss…by reason of the same acts on which the action…is based." 28 U.S.C. § 1605A(d) "contains two causation elements: (1) the property loss must come 'by reason of' the [hostage taking or torture], and (2) the property loss must be a 'reasonably foreseeable' result of [hostage taking or torture]."[40]

70. As a result of his unlawful arrest and detention, Saharkhiz was unable to work and was removed from his work positions. Saharkhiz has incurred significant expenses, including the loss of rent, property, and deposits, as a result. These losses occurred "by reason of" and were a "reasonably foreseeable" result of his arrest and detention.

71. Mehdi Saharkhiz expended significant time and resources in order to attempt to secure Saharkhiz's release, and provide Saharkhiz with legal and financial support while under arrest. These expenses and opportunity costs occurred "by reason of" and were a "reasonably foreseeable" consequence of Defendants' hostage taking and torture of Saharkhiz.

72. Plaintiff seeks damages for this count.

## COUNT VII
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

73. Plaintiff incorporates by reference the allegations of the preceding paragraphs.

74. By establishing that he was taken hostage or tortured by Defendants and that emotional distress resulted, Isa Saharkhiz (or Mehdi Saharkhiz) has established his right to recovery for intentional infliction of emotional distress.[41]

75. Defendants' conduct in holding Saharkhiz hostage and inflicting torture upon him caused Saharkhiz to suffer severe emotional harm, including depression, suicidal ideation, symptoms of post-traumatic stress disorder, and irreparable harm to his relationships with his wife, his daughters, and other friends and family.

76. Plaintiff seeks damages for this count.

---

40. *Oveissi v. Islamic Republic of Iran*, 879 F. Supp. 2d 44, 57 (D.D.C. 2012).

41. *See Roth*, *supra* note 42, at 400-401; *Valencia*, *supra* note 38, at 14.

## COUNT VIII
## PUNITIVE DAMAGES

77. Plaintiff repeats and realleges each and every allegation set forth above with like effect as if alleged herein.

78. The actions of the Islamic Republic of Iran, who has been committing, sponsoring, and supporting acts of international terror against international and domestic targets, and was designated as a State Sponsor of Terror for decades.

79. The acts of the Defendants, and each of them, carried out by their agents as described above, were malicious, willful, unlawful and in wanton disregard of life and the standards of law that govern the actions of civilized nations. The torture and anguish as above described was intended as a result by each Defendant. Isa Saharkhiz and his son, Mehdi Saharkhiz, are each victims of the acts of terror committed by Iran with the material support of each of the Defendants. In accordance with the provisions of 28 U.S.C. §1605A(c) the Plaintiffs are thereby entitled to a maximal award of punitive damages to the fullest extent of the law.

80. Iran, as a country with a history of human rights abuses and severe violations of international law, caused the suffering of many who were promoting internationally acceptable norms and human rights. Many Iranians and foreigners, including Americans, lost life, liberty, health, and property due to continued acts of terror conducted by Iran.

81. This case is among few bringing light to domestic acts of terror by Iran against human rights activists and those fighting the brutal regime of Iran. The punitive penalty of such activities should be so high as to prevent Iran from violating international human rights, torturing individuals, taking hostages, and committing extrajudicial killings. Iran has a defenseless record of human right abuses; it has been condemned internationally by each and every United Nations Commission. Unfortunately, there were no penalties imposed on Iran for its violations in similar cases at hand.

82. Plaintiff prays that judgment be entered, jointly and severally, against the Islamic Republic of Iran and the Islamic Revolutionary Guard Corps., in the amount of Five Hundred Million USD ($500,000,000).

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff demands judgment against all Defendants and respectfully requests the following relief:

83. Plaintiff is entitled to compensatory damages for personal injury, assault, battery, and unjust imprisonment suffered as a result of hostage taking and torture.
84. Plaintiff is entitled to solatium damages for Saharkhiz's detention (under 28 U.S.C. § 1605A(c)).
85. Plaintiff is entitled to special damages and other compensation for property loss suffered as a result of Isa Saharkhiz's detention and torture.
86. Plaintiff is entitled to consequential damages for their lost earning potential and other long-term damages.
87. Plaintiff is entitled to aggravated damages for Defendants' cruelty, torture, and abuse.
88. Plaintiff is otherwise entitled to general damages and all other applicable damages.
89. Punitive damages should be assessed (under 28 U.S.C. § 1605A(c)).
90. The Court should award Plaintiff his full costs and attorneys' fees as incidental damages and as otherwise appropriate.
91. The Court should grant such further and other relief as this Court deems just and proper.

Dated: October 1, 2019

                                                Respectfully submitted,

                                                _____/s/_____

Ali Herischi, Esq. (MD0024)
Herischi & Associates LLC
7201 Wisconsin Ave., Suite 450
Bethesda, Maryland 20814
Phone: 301-363-4540
Fax: 301-363-4538
*Attorney for Plaintiffs*